80 C.C.P.A. (Patents)

In re JOHNSTON et al.

Patent Appeals No. 4641.

Court of Customs and Patent Appeals.
Dec. 1, 1942.

Watson, Bristol, Johnson & Leavenworth, of New York City (Clair V. Johnson, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, one member dissenting, affirming a decision of the Primary Examiner rejecting for want of patentability over the prior art all of the claims, numbered 6, 7 and 11 to 17, inclusive, of appellants' application for patent.

Claims 6, 13 and 17 are illustrative and read as follows:

"6. The method for the preservation of aromatic, flavoring and coloring principles of fruit juices, fruit flavoring materials, essential oils of fruits and fruit extracts, which comprises adding thereto hydroquinone, whereby oxygen deterioration of such principles is prevented without materially affecting the flavor and aroma.

"13. A stabilized fruit composition comprising a material selected from the group consisting of fruit juices, fruit flavoring materials, essential oils of fruits and fruit extracts, and hydroquinone as an oxidation inhibitor.

"17. A stabilized flavoring material containing an aromatic, flavoring and coloring principle of natural fruit origin, and an organic oxidation inhibitor of the chemical compound type belonging to the group consisting of hydroquinone, toluhydroquinone, catechol and resorcylaldehyde."

The references relied upon are: Heuser, 1,550,359, August 18, 1925; Christiansen et al., 1,745,604, February 4, 1930; Calcott et al., 1,913,367, June 13, 1933; Higby, 2,005,786, June 25, 1935; Balls et al., 2,011,465, August 13, 1935; Musher, 2,026,697, January 7, 1936.

The claimed invention, as set forth in the specification, relates to a method for the preservation of fruit flavoring materials, essential oils, extracts, etc., of fruit, by the inhibition of oxygen deterioration of aromatic, flavoring and coloring principles of such substances, and to a stabilized fruit composition produced thereby. The product and method claims are so closely related that it is not necessary to give them separate consideration.

When the application was first considered by the Primary Examiner it contained claims 2 to 11, all of which were rejected on prior art. After an appeal was taken to the Board of Appeals an affidavit was filed setting out the result of tests made in accordance with the Musher reference, and the application was remanded to the Primary Examiner under the provisions of rule 138 for reconsideration under the provisions of rule 76, 35 U.S.C.A.Appendix.

Upon remand, in his statement of May 21, 1940 the Primary Examiner held that the affidavit did not present evidence which was persuasive of any error in his rejection of claims 2 to 11, inclusive.

The decision of the examiner was reversed on appeal as to claims 6, 7 and 11, and affirmed as to claims 2 to 5, inclusive, and 8 to 10, inclusive.

The references relied upon in that appeal were, in addition to those relied upon here with the exception of the Christiansen et al. patent: Kunz, 1,757,967, May 13, 1930; Griffith et al., 2,032,612, March 3, 1936; Schoop, 2,082,426, June 1, 1937.

The board there quoted claim 2 as illustrative. It reads as follows: "2. The method for the preservation of aromatic, flavoring and coloring principles of fruit juices, flavoring materials, essential oils and extracts, which comprises adding thereto an organic oxidation inhibitor in an amount which prevents oxygen deterioration of such principles and which does not materially affect the flavor and aroma thereof."

In its decision, the board approved amendments to the claims in accordance with suggestions proposed by appellant at the time of argument, and considered the claims as so amended to refer to flavoring materials, essential oils and extracts of

fruit juices and to limit the meaning of the term "oxidation inhibitor" to a specified type as "distinguished from raw vegetable organic materials."

After the said amendment was filed claims 6, 7 and 11 as amended remained in the case, and new claims numbered 12 to 17, inclusive, were added.

The case having been duly reopened, the examiner rejected all of the claims as lacking invention over the patents to Higby, Musher, Balls et al., and Heuser in view of the patent to Christiansen et al., which latter reference was cited for the first time. The examiner in his statement of October 25, 1940 stated that hydroquinone is a known anti-oxidant as shown in the Calcott et al. reference. He also stated that the patent to Christiansen et al. is concerned with using hydroquinone to treat edible materials which develop undesirable flavors and odors, and therefore the use of hydroquinone in treating fruit compositions by appellant would not involve invention. In this connection the examiner stated: " * * * it would appear that the anti-oxidant could be used for fruit compositions, since it is known that antioxidants are often (though admittedly not always) suitable for many edible compounds, as note for example, the variety of materials stabilized by Musher. Only a trial would be needed to ascertain whether or not hydroquinone could be used with fruit compositions."

Upon appeal from that decision of the Primary Examiner, the Board of Appeals, as hereinbefore mentioned, affirmed the decision of the examiner. The board referred to its former decision, noting that the only reference then before it which discussed the use of hydroquinone as an anti-oxidant was the patent to Calcott et al. In the former decision the board held that patent, instead of suggesting the use of hydroquinone as employed in the prior art, tended to discourage its use as not being especially effective, and because of this the patent suggested the use of other agents for the purpose of anti-oxidation. The board stated: "Furthermore, the patentees were concerned with the treatment of such substances as oils, fats, fatty oils, fatty esters, fatty acids and salts of fatty esters to retard deterioration and development of rancidification."

The board in its second decision, one member dissenting, reversed its former unanimous holding upon the same reasoning as that given by the Primary Examiner. It noted that the Christiansen et al. patent, like the Calcott et al. patent analyzed in the first decision, is also concerned with the preservation of oils, but particularly cod liver oil and castor oil, which tend to develop a "mal flavor" (an offensive or objectionable taste and/or odor). The board stated: "The patentees [of the Christiansen et al. reference] claim a method of preventing the reconversion of *edible* oils by adding a compound selected from a certain class including as one of the class, hydroquinone." The board held there was no invention in trying the material suggested by the Christiansen et al. patent for use in another edible oil for the purpose of preservation and prevention of deterioration. It declined to find patentability in the use of hydroquinone for stabilizing purposes with fruit juices, fruit oils, etc., for the reason that it was employed for such purposes in an analogous use in the prior art, since the problem of preventing oxidation of fruit material was not new as is disclosed in the Heuser, Higby and Musher references.

There was no rejection of any of the claims on the ground that the claimed oxidation inhibitor belongs to the group consisting of hydroquinone, toluhydroquinone, catechol and resorcylaldehyde.

In the dissenting opinion it was stated that the Christiansen et al. reference was even more remote from the claims on appeal than the patent to Calcott et al. The bad taste and odor of cod liver oil and castor oil were pointed out as being notorious, and it was stated that these features can be removed by a steam-vacuum process. The dissenting opinion notes that in the Christiansen et al. patent hydroquinone or the like is added to prevent the reversion of cod liver oil and castor oil to their malodorous and malflavored condition after such steam treatment. The dissenting opinion further mentions that the fatty vegetable and animal oils of the references are quite different from the fruit materials claimed here and that it would not be naturally assumed that a substance found to have an anti-oxidant effect for fatty animal and vegetable oils would also be suitable for use with fruit juices, fruit extracts, etc.

A request for reconsideration was filed by appellants, and the board, one member dissenting, affirmed its former decision, stating among other things that claim 1 of

the Christiansen et al. patent describes the treatment of *"edible oils"* broadly and held this particular term would include the essential oils of fruit juices.

Thereupon this appeal was taken.

With respect to the holding below that only a trial would be needed to ascertain whether or not hydroquinone could be used with fruit juices, the examiner cited the cases of In re Grettie, 104 F.2d 359, 26 C. C.P.A., Patents, 1259, and Id., 112 F.2d 812, 27 C.C.P.A., Patents, 1293. Upon examination we find neither of these cases applicable to the facts herein. In the former Grettie case we held that an examination of the prior art would teach anyone skilled therein that lard, which is a fatty oil, might be treated to prevent rancidity by the same ingredients as were used as a stabilizer in shortening, which is also a fatty oil. In the latter Grettie case we held that there was no invention in determining by mere experiment that glycolic acid, known in the prior art as an effective anti-oxidant for non-drying oil such as olive oil, was also effective for the same purpose for other non-drying edible oils such as lard, beef fat, hydrogenated cotton-seed oil and other vegetable and animal fats and oils and mixtures thereof. In both of these cases it will be noted that there was held to be no invention in using an anti-oxidant known in the treatment of one kid of fixed or fatty oils in another oil of the same general family.

In our opinion the cases of In re Sibley, 88 F.2d 960 and 964, 24 C.C.P.A., Patents, 1143 and 1155, are more in point. In those cases this Court held that the use of certain anti-oxidants in the rubber art would not preclude a finding of patentability when used in a composition in the drying-oil art, the arts not being related.

That there is a clear distinction between oils of animal and vegetable origin (the fatty or fixed oils) and essential oils is well recognized by chemists. Hackh's Chemical Dictionary, 1929, defines essential oils as: "A group of volatile oils of characteristic odors. Distinguished from fatty oils by. their volatility, non-greasiness, and non-saponifying property." ; defines fixed oils as: "Any liquid fat which absorbs oxygen and becomes resinous (drying oils) or remains liquid (non-drying oils) as compared with evaporating oils (essential or volatile oils)." ; and defines an edible oil as "A fixed oil that is used as food or a food accessory." The same authority compares the two classes of oils in the following language:

"oil. essential—The volatile or distilled oils of plants, leaves, flowers, etc. They consist of aromatic hydrocarbons, aldehydes, alcohols, ethers, acids, terpenes or camphors.

"oil. fatty—The non-volatile oils of plants and animals. They consist of mixtures of fatty acids and their esters (usually triglycerides) and are subdivided into three groups: solid (mainly stearin), semi-solid (mainly palmitin), and liquid (mainly olein)." The following definitions are quoted from Bennett's Standard Chemical and Technical Dictionary, 1939:

"oil, essential (volatile oil). Oily substance having marked characteristic odors, occurring in fruits, flowers, leaves, stems, etc., e. g. lavender oil; complex mixtures chiefly of terpenes, and their oxygen derivatives.

"oil, fixed. An oil which cannot be distilled without decomposition and does not evaporate under ordinary conditions, derived from animals, vegetables, or fishes by pressing or extracting."

We do not think it necessary to fully discuss the references, for the reason that we are in accord with the unanimous decision of the Board of Appeals on the first appeal in this case. While it is true that the preservation of fruit juices is referred to in certain of the cited prior art, the use of hydroquinone is mentioned only in the Christiansen et al. patent and in the Calcott et al. patent, and the latter, as we have hereinbefore stated, the board held to be an improper reference.

It is clear from this record that if it had not been for the introduction of the Christiansen et al. reference as aforesaid the claims before us would have been allowed by the board.

The Christiansen et al. patent relates to the preservation of fatty oils, particularly cod liver oil and castor oil, in a substantially tasteless and odorless condition. In accordance with the specification of that patent, the oils which are "malflavored" are processed in a vacuum in which steam is passed through the oil. The oil is thus demalflavored and in order to prevent its reversion to its original malflavored character an anti-oxidant is added, which may be hydroquinone. .

It is to be noted that in defining the special sense in which certain terms are

employed in the Christiansen et al. patent we find the following: "'edible oils' to designate oils used for therapeutic and alimentary purposes". In our opinion this definition clearly confines that patent to the kind of oils and their use set out in the definition and to no others. These oils are of animal and vegetable origin and are not essential oils. They are fixed or fatty oils. Therefore the holding that the claims of that patent containing the words "edible oils" are broad enough to include the fruit extracts and oils involved herein so far as we are able to ascertain we think is clear error. We have no doubt that the Christiansen et al. patent is as far removed from being a proper reference in this proceeding as was the Calcott et al. patent. It is our opinion that the tribunals below erred in holding that it would not involve more than the exercise of ordinary skill in the art to apply hydroquinone as an anti-oxidant to fruit oils, fruit extracts and fruit juices in view of references showing the use of that anti-oxidant with fatty animal and vegetable substances for therapeutic purposes and others showing that it is old in the art to preserve fruits and fruit juices.

For the foregoing reasons, the decision of the Board of Appeals is reversed.

Reversed.

Emery, Holcombe & Miller, of Washington, D. C. (Charles F. Miller, Jr., of Washington, D. C., of counsel) for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.